On September 10, 1997, the Knox County Grand Jury indicted appellant, Derek Fulton, on one count of murder in violation of R.C. 2903.02(A) and one count of involuntary manslaughter in violation of R.C. 2903.04(A). Said charges arose from the drowning death of one Robert Welker.
A jury trial commenced on March 17, 1998. At the close of the prosecution's case and again at the conclusion of the trial, appellant made a motion for judgment of acquittal. The trial court denied said motion. The jury found appellant guilty of murder. By judgment entry filed March 20, 1998, the trial court sentenced appellant to fifteen years to life.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT ERRED IN ADMITTING EVIDENCE REGARDING A QUASI-SCIENTIFIC TEST PERFORMED BY OFFICERS OF THE KNOX COUNTY SHERIFF'S DEPARTMENT AND ANALYZED BY AGENTS OF THE BUREAU OF CRIMINAL INVESTIGATION.
II
 THE VERDICT WAS NOT SUSTAINED BY SUFFICIENT EVIDENCE.
III
 THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT THERE WAS NO EVIDENCE THAT TENDED TO PROVE THAT DEFENDANT-APPELLANT HAD THE SPECIFIC INTENTION TO CAUSE THE DEATH OF ROBERT WELKER.
 I
Appellant claims the trial court erred in admitting evidence of a "quasi-scientific test" performed by Captain Dennis Foster of the Knox County Sheriff's Department. We disagree.
The admission or exclusion of evidence rests in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
Mr. Welker's dead body was discovered floating in a pond at a commercial gravel pit. Mr. Welker's body had sustained a severe beating. At the time of discovery, Mr. Welker's body was wearing a pair of white socks only. Captain Foster performed a test wherein he wore a pair of socks similar to Mr. Welker's and walked into the pond from the point where blood spots were discovered (six inches from the pond's edge). T. at 226-227. Captain Foster performed this test to determine "if there would be any difference between our socks and the socks that the victim was wearing as far as the contents of the mud and so forth." T. at 226. In essence, Captain Foster performed the test to disprove the theory that Mr. Welker had walked into the pond causing his own death. Captain Foster performed this test on five different pairs of socks. One pair was soaked in water for approximately thirty hours, the same amount of time Mr. Welker's body was determined to have been in the pond. T. at 229. All five pairs of socks were then analyzed and compared to the stains and debris found on Mr. Welker's socks. G. Michele Yezzo, a forensic scientist with the State Bureau of Criminal Investigation, testified the debris on the five pairs of test socks were not the same as the debris found on Mr. Welker's socks. T. at 272-273.
Appellant argues the test socks were tested under dissimilar conditions because the tests consisted of merely walking into the pond when in fact Mr. Welker was believed to be in the water in excess of forty-eight hours. Appellant argues the tests confused the jury, were unreliable and probative of nothing. Appellant further argues the tests were not relevant under Evid.R. 402 and were inadmissible pursuant to the Supreme Court of Ohio's decision in Miller v. Bike Athletic Company
(1998), 80 Ohio St.3d 607.
Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. All relevant evidence is generally admissible and irrelevant evidence is not. Evid.R. 402. In Miller at paragraph two of the syllabus, the Supreme Court of Ohio held "[w]hen an out-of-court experiment is not represented to be a reenactment of the accident and deals with one aspect or principle directly related to the cause or result of the occurrence, the conditions of the accident need not be duplicated." Further, we note expert testimony is admissible if it conforms to Evid.R. 702(C):
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
Our first question is whether the tests were relevant to the fact sought to be proven. There is essentially no dispute Mr. Welker was severely beaten by appellant and others, taken to the deserted gravel pit and abandoned within six inches of the water's edge. At trial, appellant argued there was no direct evidence that he and the others put Mr. Welker in the water. T. at 614. Based upon the defense theory of the case, it was relevant to disprove the allegation that Mr. Welker walked into the water on his own accord. Therefore, we find the issue of how Mr. Welker got into the water to be relevant and the sock tests to be probative of that issue.
Our next inquiry is whether the sock tests pass the requirements of Miller. Because the tests sub judice were not represented as reenactments, duplicative reenactment was not required. Our inquiry is limited to whether the reenactment was similar. Mr. Welker was discovered with his socks on only; Captain Foster wore similar socks five different times; the environmental conditions were similar; the path taken to the water was from the blood spots discovered near the water's edge; and one pair of socks was placed in water, albeit not gravel pit water, for thirty hours to simulate Mr. Welker's time in the water. Upon review, we find the reenactment was indeed similar and qualified under Miller and Evid.R. 702(C). The trial court did not err in admitting the sock tests.
Assignment of Error I is denied.
 II, III
Appellant argues the trial court erred in denying his motion for acquittal and his conviction was against the manifest weight of the evidence. We disagree.
Crim. R. 29 governs motions for judgment of acquittal and states as follows:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
The standard in determining a Crim.R. 29 motion is set out inState v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus:
 Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.
On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
Appellant was convicted of murder in violation of R.C.2903.02 which states "[n]o person shall purposely cause the death of another or the unlawful termination of another's pregnancy." "Purposely" is defined in R.C. 2901.22(A) as follows:
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
Appellant argues the facts failed to establish he purposely caused Mr. Welker's death. While it is undisputed appellant participated in the brutal beating of Mr. Welker and the dumping of his body at the gravel pit, appellant argues there was no direct evidence that he placed Mr. Welker in the pond causing his death by drowning. Our inquiry is whether the facts proven by direct and circumstantial evidence constitute sufficient credible evidence of "purposely cause the death of another."
Keith Norton, M.D., the Franklin County Coroner who performed the autopsy on Mr. Welker, testified Mr. Welker sustained head injuries caused "by a force that would have rendered him unconscious." T. at 358. Dr. Norton opined although no water was found in Mr. Welker's lungs, Mr. Welker died as a result of suffocation or "dry drowning." T. at 360-361. Dr. Norton explained an unconscious body placed in water can react in a "reflex" action, that is, the epiglottis will close to prevent water from entering the windpipe but in turn it prevents air from entering the lungs thereby causing suffocation.Id.
Testimony established appellant and others severely beat Mr. Welker rendering him unconscious. T. at 316, 466- 467, 469, 543-545. After Mr. Welker fell to the floor, appellant kicked Mr. Welker in the head. T. at 469, 544. A witness, Kevin Phillips, testified appellant then stated "[n]eed to take him [Mr. Welker] to the gravel pit and put him in the water." T. at 471. Appellant removed Mr. Welker's wallet and handed money out to Mr. Phillips and Dan Dales. T. at 471-472. Appellant and others placed Mr. Welker's unconscious body in the bed of a pickup truck owned by Tim Pitcox, drove with the body to the gravel pit, and dumped the body near the pond. T. at 473-478, 545-546. Mr. Phillips observed appellant "bouncing up and down" and "jumping" on Mr. Welker's unconscious body. T. at 478. Appellant "ducked down" for a couple of seconds, returned to the truck and threw Mr. Welker's pants into the truck. T. at 479. Mr. Phillips disposed of the pants and some bloody towels in a creek. T. at 481. Mr. Dales testified upon returning from the gravel pit, appellant and Sam Musgrave vandalized Mr. Welker's vehicle and drove it to the gravel pit. T. at 548. Appellant told Mr. Phillips he had wiped his fingerprints from the vehicle with "a Big Mac or a hamburger or something." T. at 488. Mr. Phillips testified several hours after the incident, appellant stated "he thought he killed him." T. at 485.
Mr. Pitcox testified he had refused to let appellant and the others use his pickup truck but relented after appellant threatened him. T. at 312-313. Mr. Pitcox testified "there was nothing else I could do, so I said okay." T. at 314. Mr. Phillips confirmed this testimony. T. at 473. Upon Mr. Welker's body being placed in the bed of the pickup truck, Mr. Pilcox observed Mr. Welker breathing and bleeding from the nose. T. at 316-317. After arriving at the gravel pit, appellant and others carried Mr. Welker's body to the pond. T. at 318. Mr. Pilcox testified he remained with the truck and because it was dark, he "couldn't see after that." T. at 318.[1] Mr. Pilcox confirmed Mr. Phillips disposed of the pants and the bloody towels in the creek. T. at 323.
Upon review, we find the evidence presented supports the jury's verdict. Appellant admitted to wanting to put Mr. Welker in the water; he coerced others to take an unconscious Mr. Welker to the gravel pit; once at the gravel pit, he disappeared from view with Mr. Welker's body; he bounced and jumped on Mr. Welker's body; he returned to the pickup truck with Mr. Welker's pants; and he orchestrated the destruction of the evidence. Appellant had no reason to conceal evidence unless Mr. Welker was dead.
Upon review, we find sufficient evidence presented to the jury, if believed, to support appellant's conviction and no manifest miscarriage of justice.
Assignments of Error II and III are denied.
The judgment of the Court of Common Pleas of Knox County, Ohio is hereby affirmed.
By Farmer, J., Wise, P.J. and Gwin, J. concur.
-------------------------
-------------------------
 ------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Knox County, Ohio is affirmed.
-------------------------
-------------------------
 ------------------------- JUDGES
[1] We note State's Exhibit 32 portrays the close proximity of the road and gate to the edge of the pond. However, this picture was taken during daylight hours and as such, is irrelevant given that the incident occurred at night.